Gary Hurst is first. Thank you. Thank you, R. I think the most vexing question in this appeal has to do with the issue of nominative fair use. And it's very vexing just because we've got various different versions of this software, some of which are open source, public, and some of which are not. And my clients are trying to explain to the public that they are offering, you know, the non-commercial versions of this software. And in order to do that, of course, they refer repeatedly to the name of the software. But if you look at our – your Honor, I forgot to ask that I want to reserve two minutes. Sure. I'll watch for you. Thank you. And now I've lost my point. Well, let me try to direct you back to your point and see if you can help me. The nominative fair use doctrine says that you can use a trademark to refer to the trademark good, but not to your own good. You agree? Yes. My difficulty here with your client's use is that they use it to refer to their own products, Neo4j Enterprise and government package for Neo4j. In other words, they don't say Pure Think's variation of Neo4j or, as I put it when I talk to my clerk, Andy's Neo4j, Andy's modified Neo4j. Your product is referred to as Neo4j Enterprise and government package for Neo4j. And that seems to me to be a direct reference to your product, not to Neo4j's product. Would you respond to that for me, please? Yes, Your Honor. I think that the important point here is that what we're referring to is not commercial versions of Neo4j, but these free use versions of Neo4j. Well, how can I tell that from the title? Neo4j is selling its Enterprise Edition, which is not the free use edition. It also has, from time to time, a modified open source code out there. But they are out there in the market trying to sell something. Why does your use of just the pure title, Neo4j, in two of your products, why is that a description of their good rather than yours? See, you could say pure things version of Enterprise using the Neo4j public source code. That's a long title and, of course, you wouldn't use it. But that would be a nominative use. Here you describe your own product as Neo4j Enterprise, and I'm trying to figure out how I can tell just from that bare title that all you mean to describe is the portion of the public source code that you're using and not the entire product. Two points in response to that. One is I think that it's important to look to the sophistication of the users. I got lost in this brief many a time because I don't know anything about graph databases. So you look, those kind of users are very likely to know that we are not appropriating the caches of the trademark. Well, doesn't the evidence up here in the preliminary judgment cut the other way? I mean, what we have is lots of evidence of these sophisticated users who are smarter than all four of us, I guess, calling up the three of us maybe, calling up Neo4j and saying, I can't figure out your product. It's not working. And it turns out it's your product. So we're at a preliminary injunction. Doesn't the judge have ample evidence that even sophisticated users are confused by this name? Well, we have no idea if the users who have talked to Neo4j are sophisticated or not. But we're up here in a preliminary injunction. And the question is whether the judge, I forget who the judge was in this case, Judge Davila, abused his discretion. And you're saying, well, every, you know, sophisticated users would know. And yet the evidence in the record seems to be, at least support, a contrary inference. Don't you agree? Yeah. That might support a contrary inference. I would agree with that. Is it the kind of inference that can be resolved on summary judgment? I don't agree with that. Well, but we're not, I know we're looking at a summary judgment here. But even if the judge should have found fact questions, if you will, he also entered a preliminary injunction. I missed that point, which is just that his preliminary injunction is based entirely on his summary judgment rulings. And so we have no idea how he would exercise his discretion if the summary judgment is inappropriate on the trademark issues. So let's, that gets the question I wanted to ask. Let's assume we have a record which would support a preliminary injunction, but not summary judgment. What do we do? I think the response that has to be remanded. We have no idea. I mean, that's what the definition of discretion is. We have no idea whether or not the judge would exercise his or her discretion in the fashion that they did if their summary judgment ruling is inappropriate. So success on the merits means success on the merits of a summary judgment motion as opposed to success on the ultimate merits? Well, if he wants to opine on success on the merits as well as damage and everything else, he could do so. Based upon evidence that's put in front of him at that point. But if you say I've been never entering a preliminary injunction because I entered a summary judgment in favor of this party, I don't think he can just say, well, if he hadn't entered a summary judgment in favor of this party, he or she would have entered a preliminary injunction. I don't think that this court is in a position to make that kind of a determination. It has to go back. Is that such a leap, though, to say even in the absence of summary judgment, having said what the court said with respect to summary judgment, to infer that in connection with the injunction that the court was actually applying the standard of looking at success on the merits? As opposed to chances of success with respect to a particular pretrial motion? I think that the court may, in fact, look at the chances of success. But we have no idea whether when the court's entire consideration is tinged by its notion that summary judgment was appropriate. I don't think it's appropriate for this court to say, well, if he had exercised his discretion, he inevitably would have come out with a decision that he did. That's really the problem we've got. Okay. Thank you. I'd also like to bring up, since I'm running a little low on effort, is the issue of false advertising. And if you look at false advertising, it comes down to what the court said was the removal of the Commons Clause and descriptions of our offerings as drop-in replacements. With respect to the Commons Clause, I think that we have an argument over copyrightability and what it means in this instance. But if you look at the actual language of the Free Software Foundation's 8GPL license, there's the word I was looking for. And that's at ER1408. It says, everyone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed. So whether or not referring to copyright as being in the program or not, the copyright for the document is with the Free Software Foundation. And the Free Software Foundation says you don't get to remove these provisions. Sorry, is this your standing argument? No, this is an argument with respect to whether or not my clients engaged in false advertising because they removed the Commons Clause from the instances of Deo Forte that they used in their business. Well, here's the problem I have with the false advertising claim. You advertise that, and now I'm going to get the name wrong, ONGB, GDB is a free and open source version of Neo4j EE, and is a drop-in replacement. And it's not a drop-in replacement. I think that assumes the answer to a factual issue. The factual question there is, what would users of this type of software? Now, your client says drop-in replacement is something that you can put in seamlessly, and it will replace the other system, and there's no evidence here that that's true. All the evidence is to the contrary, isn't it? What my client said is that you can formulate queries and drop in your files into the commercial versions, and you'll be able to run it, run your files through the commercial versions. He didn't say, you know, my – no, not my, ING. Now, I'm screwing up the name. INGDB is, you know, a feature-for-feature replacement because that's not what I said. So your argument is that when they said – your argument is that when your client said drop-in replacement, it wasn't saying anything about compatibility? No. As a matter of fact, I think it is important that they were talking about compatibility in the sense that you could run your queries on the program. It's compatible to that extent, but to say that as a matter of law, saying drop-in replacement to sophisticated users indicates a feature-for-feature analysis – I don't think that you could do that, or you should do that on summary judgment. Well, what does drop-in mean there? I mean, I understand replacement. I believe what my client testified to, and I'm sorry I don't have the ER quote right on my fingertips, but what my client was testifying to was that you could run your queries in there and drop your files into the program, and the commercial program will work with those files. I think that, you know, it occurs to me – I hope I don't screw up this badly because this just occurred to me, but it's like saying that I have a program that will read – for example, Microsoft Word will read PDF files, and, you know, you can just pull a PDF file and plug it into a Microsoft Word document. That doesn't mean that it is holding on, that it's a feature-for-feature replacement. I get that, but if we're talking about the impact of a false representation, false advertising, wouldn't that be on the consumer? And my recollection of the record, and I'm open to you telling me that this is not correct, is that end users, as opposed to parties in this case, said, no, it's not a drop-in. So whatever drop-in means to the relevant consumer of this product, those people said, no, I don't see it as a drop-in. So if it's the likelihood of confusion or impact on the consumer, your client's testimony would be of what he meant is entitled to less weight, isn't it, than testimony from ultimate consumers that they, in fact, were confused? It is something that could be taken into account. And, by the way, I see that I'm running into – by the time I'm running for rebuttal, but I want to answer your question. You know, those consumers, it is a factor that could be taken into account, but that's one of those factual issues that you put in front of the jury. I mean, how many users? Who were they approaching? I mean, what we've got is some evidence taken from this question of who used the program, and we're plugging it in in a place where it's not relevant. So I see I'm way out of time, but I'd like to reserve. Well, I'll give you a little bit of time for rebuttal. Thank you. Mr. Levy, you've disappeared from our screen. Here you are. Proceed. May it please the Court, I will now be appearing on behalf of the Neo4j at LE's. I note that, in argument, counsel did not address the initial standing issue that they attack on appeal. I would like to address that briefly unless the Court feels that it has already been resolved. I know there are a lot of issues in this case. You can address whatever you feel like you ought to. Thank you. The Haliki case, in our view, is the main source for the standing analysis, as well as, of course, the statutes. Haliki lays out three different elements for which standing can be shown, and the appellants do not attack all three of them. So by definition, they cannot succeed on the standing issue. Well, does it matter if they're the registrant? It does matter if they are the registrant. That is the standing analysis under 1114, and that's one of the points that Haliki makes. That is an acceptable way to show standing. Right. I guess my question was poorly phrased. If they are the registrant, doesn't that end the standing analysis? It does. Correct. Would the Court like us to discuss? Well, I'll tell you what would be helpful for me, because I struggled with this at the beginning of the case. We have a partial summary judgment by the district court. Typically, we don't review partial summary judgments. They're interlocutory orders. The district court also entered a preliminary injunction. And our cases say when the preliminary injunction is based on the summary judgment, we may look at the summary judgment. It doesn't say we must. And then we have a district court that does a separate analysis on injunctive relief at the end of its order. So tell me what we're reviewing here. Are we reviewing only the preliminary injunction? Are we reviewing the summary judgment? Could it be possible that there might be a fact issue in the case, but nonetheless the preliminary injunction should be sustained? Help me out on that front. I will attempt to. Unsurprisingly, the Court has the standard of the rule exactly right. And that is an issue that we struggle with, because, of course, we are bound by the frame that the appellant creates in his or her brief. And the appellant's briefing appears to only attack the summary judgment. We struggle with that to some extent for exactly the reason the Court is identical. If the challenge is only to the motion for summary judgment, it would seem up to the Court's discretion whether it reaches that issue. If, in fact, the challenge is to the preliminary injunction, I believe it was Judge Erickson who mentioned, that's a different standard. And that's not a standard that is addressed or evaluated in the appellant's opening brief. We do cite it in our standard of review section, because we believe that is the critical point, given the status of this appeal. And, of course, the district court would have applied the different standard that is used for a preliminary injunction for that portion of the order. And a separate standard for the motion for summary judgment. Scalia. Well, so could you address, and I was going to ask your friend to do this, too, the last portion of the district court's order, which is labeled injunctive relief, in which the judge seems to go through all the elements of a preliminary injunction, says, must show an irreparable injury, the eminent, cites the winner test from a different case. And then says, the Court agrees that plaintiffs face irreparable harm and goes through all the parts of the order, of the test. Is that an independent evaluation, or is the Court just saying, well, because I've granted summary judgment, the plaintiffs have established a likelihood of success on the merits? It is an independent analysis, but certainly it is informed by the Court's prior findings. The Court addressed the summary judgment standard first, we believe, correctly, because that standard is higher. And then it went and did the preliminary injunction analysis, where the standard is a likelihood of success, as opposed to whether or not there is an issue of fact that could lead a reasonable jury to rule the other way. There are cross motions here, so it's a bit difficult. And I take it you're, because your opponents are certainly free to try to prove at trial, which remains in this case, that the likelihood of confusion isn't so great that a permanent injunction should be entered or the damages shouldn't be awarded. But I'm just trying to figure out what we do with that at this stage of the case. Normally what we see is a district judge saying, here's my findings of fact at a preliminary injunction hearing. Here's my conclusions from them. Here, for whatever reason, and you weren't the only side that moved for summary judgment. The other side moved for it, too. The judge disposes of that motion, at least partially, and then moves on to this. And so that's what's giving me a little bit of difficulty in figuring out what our standard of review is. It is an unusual posture, both because of the partial summary judgment, which means the underlying case is ongoing, as well as the preliminary nature of the preliminary injunction. In other words, had there been a complete summary judgment, one would have expected a permanent injunction to issue. But because we are mid-litigation, the injunction that's issued is only preliminary. In terms of the standard of review, our position is that it depends on what portion the court is addressing. If the court is analyzing the preliminary injunction, we would use the standard for that order. However, if it is addressing, which as the court indicated, it can, but need not. If it is addressing the summary judgment issue at this point, then it utilizes that standard. Does that make sense? Judge Van Dyke. Judge Van Dyke. So building on that, it seems like because we have discretion to, but we don't have to address the summary judgment issue, would you agree we probably need to be clear what we're doing, right, in any decision? Because if it's confused about what we addressed, for instance, if we did not address the summary judgment issue, but it's not clear, then it could create confusion downstream, right, either before the district court or in a future panel if there was another appeal. So I assume both sides would agree that we just have to. It creates an odd circumstance where we have discretion to address the summary judgment ruling, but we don't have to. I guess that just means we probably need to be clear what we're doing. That is a fair comment and certainly an insightful one because, of course, if the court reviews at this stage, that would preclude subsequent review, whereas if it did not, it would not. And so that issue would be important. And my difficulty with taking on the summary judgment is that it is by definition an interlocutory order, subject to reconsideration by the district court at any time. It is not a final judgment. And so it's sort of a strange thing for us to take it on now. It doesn't give anybody much help because when you go back, the judge can say five minutes after you're back there, all right, you got more evidence, let me hear it. It wasn't meant to be a final order. And so that's part of my difficulty in this case where the other cases where we've addressed them seem to be final summary judgments. And so we review the summary judgment, and if we think it's wrong, we might well say the injunction is wrong. But here the judge necessarily had to find some facts in order to do this, I think. Maybe I'm wrong. But that's ‑‑ and I know that wasn't phrased. This isn't jeopardy. That wasn't phrased in the form of a question. I'm sorry. The court, the Trump court did make findings of fact and reached a conclusion as to certain claims, the trademark claim, the false advertising claim, and the 1125 claim. Could you address the false advertising claim? I think, you know, it's pretty clear to me at least, well, it's clear, that the first two iterations of your opponent's project used the name Neo4j. The third iteration did not. Why should they be ‑‑ why is there a false advertising claim here? Even as to the third iteration, that would be the ONGBB iteration, they did utilize, although it doesn't utilize the mark within the product name there, it does still utilize the mark in a manner that does not describe Neo4j's products. Again, if we look at the Horfage case in this circuit, that indicates that this threshold analysis is critical, then it points to the reason that there is a similar false advertising claim. The Horfage is a trademark claim case, but the concepts are quite similar. So in the ONGBB iteration of the plaintiff's, excuse me, of the appellant's product, they did two things that were false or misleading according to the district courts. First, as the court indicated in the initial argument, there was the drop‑in replacement. And for the drop‑in replacement, the court made two alternate findings. First, it took the appellant's description of what that means, it just accepted that, and said, okay, let's assume that the consumers understood this in the manner that you appellant believes that it should be understood, which is compatibility. And it goes through the facts and shows that there's no way that they could have tested compatibility. And as Judge Erickson points out, in footnote 13, page 38, we list a whole host of undisputed facts that show there were actual compatibility problems. And we also have the Raffle Declaration that opines that compatibility problems will arise. So under that standard, under the meaning that they ascribe to it, their statement is false or misleading. The alternate finding that the court made was that drop‑in replacement actually means feature for feature similarity. And under that standard, it still fails. So whichever way the consumers understood it, and the judge's comments were exactly right, it's the consumer's perspective that counts here, not the party's. But under either of those, the falsity is shown. The second false advertising dealt with referring to it as free and open source. That is highly misleading because we know from the undisputed evidence that, in fact, Mr. Suhi stripped the licensing in order to present it as free and open source. So if I have a website and I offer Microsoft Word that is free to you, the implication is that Microsoft permits that. I can't strip the academic license and give it to you for free by lying to Microsoft or by stripping its license. That's misleading, and that's what the court found. I understand. As I understand the district court's order, it's not that they can't use the title ONGDB in the future, correct? That is correct. It's just that they can't promote the product in the ways you've just talked about? That's right. In fact, the court made several hard asks. The court also said that there's no problem with referring to true Neo4j products. It can do that in the sale of service. It can do that in any manner that it wants. The problem here is that they consistently and repeatedly use the mark in e-mails to promote their services and products. They used them initially in the products themselves. The court notes that later changed. But even after it changes, we have comments by Mr. Suhi where he's telling the consumers, well, we call it this, and they're using our mark. So even after they change to ONGDB, the primary participants are still telling consumers, well, it's the same as this other product that they've created. Could they sell a product entitled not Neo4j but better? I'm sorry. I did not understand the question. Sure. What if they called their product not Neo4j but better? Would that be a nominant of fair use? They certainly can. That's in some ways what they could do with ONGDB. That is, they could sell ONGDB. They could even say ONGDB contains some parts of Neo4j's. You're talking about advertising materials and promotions. I guess my question is, could they use your name in the title of their product and have nominant of fair use? What I was trying to think of a product that said better than Neo4j. Yeah, Super 7-Up. I understand. It's difficult to hypothesize. They certainly didn't do it here. The closest I could come to, Your Honor, would be the use that is proposed in the Toyota case. So in Toyota, there is a reference to a website that might indicate, and I don't recall what the court suggested there, but it was something akin to not Lexus, which was the product there. So that's theoretically possible. We don't have that here clearly. Here they are clearly using our mark to refer to their product. We've taken you over. Let me see if either of my colleagues have other questions. I have what I think is a very quick, if you, that goes to the extent to which this is an interlocutory appeal. If you were to prevail on all issues, what would be left? What would be left are the other claims that are before the district court. So not the trademark claim, not the false advertising claim. There are a few claims that are left that do not cross over on the bond. Mr. Hurst, we'll put a couple minutes on the clock for you. We took Mr. Levy over, so I'll give you. First of all, looking at this as a preliminary injunction, the court doesn't say specifically that I am relying on my summary judgment rulings to do this. But even Mr. Levy tells you that his analysis of the preliminary injunction is, quote, informed by what he did on the summary judgment. And I just don't think that in the posture of this case, you could say that there would be a preliminary injunction if there's no summary judgment. Because he says, you know, his signs, he says it will impose no cognizable hardship on defendants and that the public interest is served by preventing consumer confusion. Let me push back on that and see what your response is. This judge thought you hadn't even created a fact issue on whether or not, on the elements of the trademark infringement. Maybe you did. But surely a judge who thought you hadn't even created a fact issue would have determined that the other side was at a likelihood of success on the merits, wouldn't he? That's correct. Can I build on that? Wait, wait, wait. Counsel, can I build on that? Let's say that there was no summary judgment ruling, but consistent with what Judge Hurwitz said, that the district court judge said, you know what, I'm going to grant preliminary injunction because there's not even a fact issue in this case. And it comes before us, and we're not sure we agree with that, that it goes that far, but we do think that the preliminary injunction standard was met. And so wouldn't we be able to affirm the preliminary injunction, the district court's preliminary injunction decision without having to say we agree that there's not even any fact issue? You see what I'm saying? Like the problem is you're basically letting the tail, you're asking us to have the tail wag the dog, so to speak, here. We have the possibility of reviewing a summary judgment standard under our precedent, but we don't have to. But you're basically saying if we think the summary judgment decision was wrong, then that trumps the preliminary injunction standard. That seems, doesn't seem quite right to me. Yeah. One thing I managed, I forgot to point out here, is that either party has argued this point. And I understand that as an appellee, you know, they could cite any arguments supported by the record, but I think that we would have more of a chance to talk about that. But you're saying, I think, Your Honor, that, I'm sorry, I just hit a blank spot in my thinking. Could you? Let me see if I can do it very summary. If there was no summary judgment decision at all, but the district court had, in characterizing its ruling and granting a preliminary injunction, had overstated and said I don't even think there's a fact issue here. It's all in favor of the party that I'm giving the preliminary injunction to. We would still uphold that decision on appeal, even if we didn't quite disagree with the district court that there was not even a factual issue. But even putting that aside, we thought that the district court was right in, was otherwise right because the factors favored the preliminary injunction. I think, Your Honor, and I now remember my point was that in that situation, you have to look to what, you know, whether or not the judge was relying upon undisputed facts and what we have. And if he's actually relying on undisputed facts, then yes, you uphold it. We have no way of knowing whether the judge would rely on undisputed or would find and rely upon facts. If there was no summary judgment, I think that that's very difficult to reach into that and make that determination. I think that in the situation that both Judge Hurwitz and our judge had, you remand for consideration. If the court's determination on preliminary injunction depends upon undisputed facts and there are undisputed facts, I think you give the court another opportunity to consider its exercise of discretion. Thank you. Thank you, counsel. We've taken you over. We appreciate the arguments of both counsel, and this case will be submitted. We're going to take a ten-minute recess before we take up the next case, which is mobilize the message versus Bonta. Thank you, Your Honor. All rise.
judges: HURWITZ, VANDYKE, Ericksen